[No. E014365. Fourth Dist., Div. Two. Aug. 19, 1996.]

AMERICAN HOME ASSURANCE COMPANY, INC., et al., Plaintiffs and Appellants, v.
JAMES L. HAGADORN, Defendant and Respondent.

**COUNSEL**

Spray, Gould & Bowers, Keith E. Walden, Emily S. Quinlan and Mark H. Herskovitz for Plaintiffs and Appellants.

Corsino & Sutherland and Janice M. Corsino for Defendant and Respondent.

**OPINION**

**HOLLENHORST, J.—**

FACTS

Defendant James L. Hagadorn was a construction worker who sustained a job injury on August 1, 1986. His employer, Bragg Crane Service, paid workers' compensation benefits through its insurers, American Home Assurance Co. and American International Adjustment Co. (collectively American). The workers' compensation benefits totaled approximately $155,000.

Defendant Hagadorn sued a third party, Herrera Construction Company, for negligently causing his accident. Herrera and its insurer, Ohio Casualty Group of Insurance Companies (Ohio Casualty Group), were joined in that action. American filed a lien in the third party action to attempt to recover the workers' compensation benefits it had paid.

A mandatory settlement conference was held in the third party action on September 22, 1988. Attorneys for American appeared and unsuccessfully negotiated with Ohio Casualty Group for settlement of the lien claim. Attorneys for Mr. Hagadorn also appeared and negotiated with Ohio Casualty Group. A representative of Ohio Casualty Group, Mr. Terry, testified that he offered to settle Mr. Hagadorn's claim for $650,000, on the condition that Mr. Hagadorn dismiss his third party action with prejudice before American, the lien claimant, filed a complaint in intervention. Mr. Terry's understanding was that such a settlement would defeat American's lien claim. American was obviously not told of this plan, although Mr. Terry testified that he discussed it with the settlement conference judge.

American's attorney, Mr. Samuelsen, testified that he attended the settlement conference. Mr. Hagadorn's attorney, Mr. Hodges, asked him not to file a complaint in intervention, and Mr. Samuelsen told him that a complaint in intervention would not be filed until Mr. Hodges told Mr. Samuelsen that Mr. Hodges was going to settle the case without regard to the lien claim. Trial was then set for October 24, 1988.

After the settlement conference, Mr. Samuelsen and Mr. Hodges had three telephone conversations about the case. Mr. Hodges never told Mr. Samuelsen that the case had been settled, but continued to request documents in preparation for trial. Nevertheless, Mr. Hodges filed a request for dismissal with prejudice on October 17, 1988. Ohio Casualty Group then issued Mr. Hagadorn and his attorneys a check dated October 25, 1988, for $650,512.

Since the action had been dismissed without a complaint for intervention on file, American's lien claim was defeated. Feeling betrayed, American then filed this action for imposition of a constructive trust on the settlement proceeds, for negligence per se, and for violation of statutory duty, i.e., failure to give American notice of the settlement in time to file its complaint in intervention. The case was tried on the issue of whether Mr. Hagadorn had a statutory duty to notify the lien claimant, American, under Labor Code sections 3859 and 3860.[1] The trial court found no such duty and awarded judgment to defendants. American appeals.

## DISCUSSION[2]

The applicable general principles are well established: "Under the workers' compensation statutes, an employee who suffers an industrial injury may recover compensation benefits from his or her employer without regard to the negligence of either party. (§ 3600.) With certain specified exceptions, an injured employee's compensation claim against the employer constitutes an exclusive remedy. (§§ 3601, 3602.) Where the tort of a third party causes injury to an employee, however, section 3852 permits the employee to sue the tortfeasor for *all* damages proximately resulting from the injury even though he or she has received from an employer workers' compensation benefits covering some of the same injuries and resulting disability. [¶] To prevent an employee from retaining both third party damages *and* workers'

---

[1]Unless otherwise indicated, all further statutory references are to the Labor Code.

[2]We note that, in a prior appeal (*American International Adjustment Co.* v. *Ohio Casualty Group of Companies* (Dec. 14, 1990) E006784 [nonpub. opn.]) we affirmed the granting of summary judgment to the attorneys who represented Herrera Construction Company in the third party action. In our opinion, we specifically noted that "[t]here is no dispute that one remedy still available to Employer is to pursue the funds in the hands of Employee." We cited *Board of Administration* v. *Glover* (1983) 34 Cal.3d 906 [196 Cal.Rptr. 330, 671 P.2d 834] and noted elsewhere in the opinion that "[t]he Supreme Court has held [in *Glover*] that section 3860 imposes upon the employee the duty to notify its employer of a settlement of the employee's suit against a third-party tortfeasor, and that therefore the employee must bear the consequences of any failure to give such notice. [Citation.] Accordingly, in the event that settlement funds are distributed to the employee prior to the employer being reimbursed for the benefits it has paid, the 'employer retains its right to pursue the employee' [citation] to collect such reimbursement and thereby prevent double recovery by the employee." As discussed herein, the same principles govern this proceeding against the employee.

compensation benefits for the same injuries and disabilities, the Labor Code permits an employer to recover workers' compensation benefits it has become obligated to pay and/or has paid by (1) bringing an action directly against the tortfeasor (§ 3852), (2) joining as a party plaintiff or intervening in an action brought by the employee (§ 3853), or (3) allowing the employee to prosecute the action and then applying for a first lien against the resulting judgment or settlement. (§ 3856, subd. (b).)" (*Abdala* v. *Aziz* (1992) 3 Cal.App.4th 369, 374-375 [4 Cal.Rptr.2d 130], fns. omitted.)

■ American elected the third option and filed a lien claim in the third party action. As noted above, American relied on sections 3859 and 3860 in contending that the employee was required to give it timely notice of settlement.

Section 3860, subdivision (a) provides: "No release or settlement under this chapter, with or without suit, is valid or binding as to any party thereto without notice to both the employer and the employee, with opportunity to the employer to recover the amount of compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, and opportunity to the employee to recover all damages he has suffered and with provision for determination of expenses and attorney's fees as herein provided."

Section 3859, subdivision (a) provides: "No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both. Proof of service filed with the court is sufficient in any action or proceeding where such approval is required by law."

Defendants rely on section 3859, subdivision (b): "Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852." Section 3852 provides for third party actions and employer recovery in such actions of benefits paid.

Defendants introduced expert testimony on the intent of the 1971 amendments which adopted section 3859, subdivision (b). (Stats. 1971, ch. 485, § 1, p. 969.) According to the expert, the 1971 amendments were intended to correct the situation in which an employer could dictate to the employee whether the employee could settle his third party suit or not. The amendments were intended to make it clear that an employee could settle his third

party claim without securing the employer's consent. On the issue of notice, the expert testified: "The bottom line of having this particular bill go forward is to put everyone on the same playing field with certain terms and conditions that, when employed, basically move the cases not only to a fairer conclusion but a quicker conclusion with each side being able to protect themselves subject to relevant notice. [¶] Notice became the crucial issue. And the form of the notice as set forth in the Glover decision and the O'Dell decision and various other decisions that follow basically interpret and basically allow a smooth transition between the employer's rights [and] the employee's rights . . . ." Thus, as American concedes, defendant Hagadorn had the right to settle his third party claim with the third party's insurance carrier. The issue is whether defendant Hagadorn had the right to settle his third party claim without notifying the employer of the settlement.

A review of the cases decided after the 1971 amendment to sections 3859 and 3860 makes it clear that the notice referred to in section 3860, subdivision (a), must be given by the employee in order to give the employer the opportunity to recover the amount of compensation paid from the third party. Having failed to give such notice, the employee is liable for the amount of compensation paid in order to prevent double recovery.

As noted above and in our prior opinion (see fn. 2, *ante*) our Supreme Court considered this issue in *Board of Administration* v. *Glover, supra*, 34 Cal.3d 906. In that case, a school district employee was injured by defendant Glover in an automobile accident. The Public Employees' Retirement System (PERS) paid disability retirement benefits to the injured employee. Subsequently, the injured employee filed a third party action against Mr. Glover and settled the action without notifying PERS of the settlement, and without obtaining its consent to the settlement. (*Id.*, at pp. 909-910.) PERS then sued defendant Glover to recoup its payments to the employee. Defendant Glover then cross-complained against the employee for indemnity. PERS argued on appeal that it could disregard the settlement because it was not notified of the settlement and did not consent to it. Our Supreme Court said: "We reject PERS' appeal, determining that the burden of a failure to comply with the notice and consent statutes must fall upon the employee and not upon the third party defendant, at least where, as here, such employee is the only party to the third party settlement who both knew of the existence of the employer's claim for reimbursement and had express and timely notice of an obligation to inform the employer of any such settlement. Having previously held that section 3852, pursuant to which PERS sued defendant, 'simply gave statutory recognition to principles of equitable subrogation' [citation], we conclude that those principles sustain the trial court's judgment in favor of defendant." (*Id.*, at p. 911.)

In discussing the 1971 amendments, the court stated: "The obvious purpose of these amendments was to permit an employee to segregate his own damage claim against a third party from his employer's claim against that third party for reimbursement for workers' compensation benefits paid. The employee thus is permitted to settle his own claim for a sum exclusive of amounts he had already received in the form of a workers' compensation award without jeopardizing the employer's subrogation right." (*Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, 913-914.)

After reviewing the subrogation cases, the court addressed the situation here: "It is apparent that realization of the goals of the foregoing subrogation rules within the context of [the] workers' compensation law . . . is possible here only if the burden of failure to comply with the statutory obligation of notice to PERS of the employee's settlement is placed upon the employee. The fair implementation of subrogation rights within the statutory scheme, as well as general principles of equity, compel such result here. In addition to the fact, noted earlier, that the employee was the only participant in the settlement who knew of PERS' claim for reimbursement, such employee stood to obtain double recovery if she failed to notify PERS of the settlement. Relieving an employee of the obligation to report her recovery so that she might profit at the expense of another conflicts with the fundamental precept of our law that no one should be permitted to take advantage of her own wrong. (Civ. Code, § 3517.)" (*Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, 916.)

Summarizing its conclusion that the employer's remedy was against the employee, not the thirdparty tortfeasor, the court said: "Allowing suit against such employee to enforce the obligation we have found implicit in the law of subrogation where, as here, other means are statutorily proscribed, fairly satisfies the injunction of the law to fashion a remedy for every legally cognizable wrong." (*Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, 918.) Accordingly, American could maintain its action against Mr. Hagadorn.

The appellate court cases have applied the *Glover* ruling in similar situations.[3] In *Abdala* v. *Aziz, supra,* 3 Cal.App.4th 369, the employee settled a third party suit without notice to Aetna, the employer's carrier. The trial court sustained a demurrer to a subsequent complaint in intervention, struck Aetna's application for a lien on the settlement proceeds, and denied Aetna's

---

[3]Prior to *Glover,* Justice Holmdahl, himself a former workers' compensation attorney, upheld a third party settlement without notice to the employer under section 3860, or consent of the employer under section 3859, on grounds that the employer was not adversely affected by the settlement. (*Quinn* v. *Warnes* (1983) 144 Cal.App.3d 309, 317 [192 Cal.Rptr. 660].)

request to set aside the settlement. (*Id.*, at pp. 373-374.) Citing *Glover*, the court first held that the lien was timely, even though it was asserted after settlement: "While the better practice is for the employer to notify the other parties of its lien claim as soon as it becomes aware of the third party action [citation], we cannot say Aetna's claim was untimely under the facts of this case. This is particularly true given that Aetna was unaware of the settlement negotiations until sometime *after* an agreement was reached by the participating parties because of plaintiff's failure to provide appropriate notice." (*Abdala* v. *Aziz, supra,* 3 Cal.App.4th 369, 379.)

The court then considered the fact that the settlement proceeds had been disbursed. Citing section 3858, it concluded that the employee had an affirmative obligation to notify the employer of an impending satisfaction of judgment.[4] The court adopted the reasoning of *Popovich* v. *U.S.* (C.D.Cal. 1987) 661 F.Supp. 944, discussed below. Accordingly, the court held "Absent such notice by plaintiff, Aetna was denied the opportunity to obtain an order precluding payment of the settlement proceeds pending the outcome of this appeal. . . . [¶] . . . [¶] . . . Aetna, therefore, is left with whatever remedy it may have against plaintiff in a separate action to collect its proportionate share of the settlement." (*Abdala* v. *Aziz, supra,* 3 Cal.App.4th 369, 380-381.)

The parties also cite *O'Dell* v. *Freightliner Corp.* (1992) 10 Cal.App.4th 645 [12 Cal.Rptr.2d 774]. In that case, the injured employee, O'Dell, brought a third party action against Freightliner. O'Dell settled the case before trial and voluntarily dismissed the lawsuit. O'Dell's employer, Rollins Leasing Corp., then sought to set aside the dismissal so that it could file a complaint in intervention. Rollins alleged that it had not received proper notice of the action, as required by section 3853.

The court held that, although there was improper notice, the dismissal of the action precluded intervention by Rollins. Rollins was relegated to an action against O'Dell. The court held that notice of the litigation required by section 3853 was not given in a timely manner and it failed to give Rollins a reasonable opportunity to protect its interests in the third party action. Here, of course, notice of the pending action required by section 3853 was given and the employer did file a notice of lien.[5] Rollins also claimed that section 3859, subdivision (b), required that it be given notice of the impending settlement. Although the court agreed that O'Dell had a duty to notify

---

[4]In relevant part, section 3858 states: "No satisfaction of such judgment in whole or in part, shall be valid without giving the employer notice and a reasonable opportunity to perfect and satisfy his lien." The court interpreted the section to apply to both judgments and settlements. (*Abdala* v. *Aziz, supra,* 3 Cal.App.4th 369, 379, fn. 11.)

[5]As *O'Dell* also notes, the difference between a lien claim and a complaint in intervention is that an employer must file a complaint in intervention to protect its rights when the third

Rollins of the impending settlement, it did not rely on section 3859 as the source of that duty. Rather, it concluded: " '[t]he fair implementation of subrogation rights within the statutory scheme, as well as general principles of equity, compel' the imposition of a duty on the employee to notify the employer of *an impending settlement* where, as here, the statutory notice relied upon is given late and, under the circumstances, is misleading." (*O'Dell* v. *Freightliner Corp.*, *supra*, 10 Cal.App.4th 645, 657.) Here, too, the employee had the duty to notify the employer of the pending settlement, and failed to do so.

Considering the effect of dismissal of the third party action, the court held that settlement and dismissal precluded the employer's attempted subsequent intervention. Therefore, Rollins was "left to whatever remedies it might assert against O'Dell either by suit for breach of duty to notify or as a credit against future compensation benefits it may have to pay O'Dell." (*O'Dell* v. *Freightliner Corp.*, *supra*, 10 Cal.App.4th 645, 662.) The same is true here, and American can thus maintain this suit against Mr. Hagadorn.

In *Aetna Casualty & Surety Co.* v. *Superior Court* (1993) 20 Cal.App.4th 1502 [25 Cal.Rptr.2d 301], the employee brought a third party action. Aetna, the insurer of the employer, paid workers' compensation benefits. Aetna was notified of the third party action and filed a notice of lien but did not otherwise participate in the action. The third party alleged the negligence of the employer in its answer to the complaint. Prior to trial serious settlement negotiations occurred and the employee's attorney called and wrote Aetna and informed it that it had to file a complaint in intervention to protect its interests. It failed to do so, and settlement followed.

The court noted that the filing of a lien is insufficient protection to the employer when allegations of employer negligence are made. In that situation, a complaint in intervention must be filed. (*Aetna Casualty & Surety Co.* v. *Superior Court, supra*, 20 Cal.App.4th 1502, 1507.) The court held that it is "imperative" that the employer be given notice that such a defense is being raised. (*Id.*, at p. 1508.) Since Aetna was timely given that notice, its failure to file a complaint in intervention or take other action to protect its rights was fatal to its claim. Here, the employee did not notify the employer of the settlement nor did he tell the employer that an employer negligence

---

party tortfeasor raises the issue of the employer's concurrent negligence. In other cases, the employer may rely on its lien rights. (*O'Dell* v. *Freightliner Corp.*, *supra*, 10 Cal.App.4th 645, 654.) Here, the third party's answer did raise the issue of the employer's negligence, but it was apparently not sent to the employer. The employer conducted its own investigation and concluded that there was no basis for assertion of such a claim in this case. Subsequently, the Workers' Compensation Appeals Board found that Bragg Crane Service was not negligent in connection with the accident.

defense was being raised by the third party defendant. (See fn. 5, *ante*, pp. 1905-1906.) Thus, American did not file a complaint in intervention.

In *Popovich* v. *U.S.*, *supra*, 661 F.Supp. 944, the court considered the duty of notification in this situation and held that the third party defendant did not have the duty to notify the employer under section 3858. However, it also held that the duty to give notice falls clearly on the employee. (*Popovich*, at p. 948.) Since that duty was violated, the issue was whether relief could be obtained in that action. The court held that it lacked jurisdiction to grant such relief, and relegated the employer to an action against the employee. The court also stated that: "The California courts have often emphasized that an important policy of the California workers' compensation statutes is to prevent double recovery by an employee. It is thought to be unfair to have the employee recover fully for his injury against a negligent third party while keeping for himself the worker's compensation payments which the employer has made to him. On the facts of the instant case, such double recovery may well give rise to a quasi-contractual cause of action by the employer against the employee. There is also at least the possibility of a new action by the employer against the employee for breach of the statutory duty to notify the employer of the impending satisfaction of judgment." (*Id.*, at p. 951.)

Thus, our Supreme Court and all of the appellate court cases have recognized the employer's right to maintain an action against the employee for breach of the specific duty to notify the employer so that its lien claim may be timely asserted.

We have thus concluded that the employer may maintain this action against the employee for failure to give the requisite statutory notice. Since the employee's failure to give notice of settlement is conceded, breach of that duty has also been shown.

Defendant Hagadorn responds that (1) the trial court properly found that he did not breach any statutory duty of notice; (2) American failed to prove damages; (3) American had no actual damages; and (4) American misconstrues the effect of a workers' compensation determination.[6]

The first contention falls quickly. Defendant argues that notice and consent of the employer are not required because his settlement with the third

---

[6]Defendant Hagadorn understandably urges us to apply a substantial evidence standard of review. American argues that an independent review standard is appropriate.

The substantial evidence standard of review applies where the appeal turns on the trial court's determination of disputed factual issues. Here, the historical facts were relatively

party defendant was exclusive of workers' compensation benefits received. As the cases discussed above demonstrate, section 3859, subdivision (b) allows the employee to independently settle his or her claim with the third party defendant. There was a dispute as to whether the settlement was only a settlement of defendant's claim. For example, the check itself refers to full settlement of all claims, and the claims manager for Ohio Casualty Group testified that he was aware of the lien claim at the time the check was issued, he intended to settle all claims, and he did not specify in any document that the lien claim was excluded from the settlement.

Nevertheless, in support of the judgment, we assume that defendant Hagadorn is correct, and that his third party settlement was only for his own claim and did not include funds for the lien claim. However, it does not follow that the employee does not have to give notice of the settlement. While section 3859, subdivision (b) allows independent settlements, *it does not allow the employee to settle his or her claim with the third party defendant without notifying the employer, as required by section 3860, subdivision (a).* As the cases discussed above state, the employee may be liable for breach of his statutory duty to give notice, regardless of whether the settlement amount was intended to settle both the employee's claim and the employer's lien claim.

In addition, section 3859, subdivision (b), itself provides that "Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852." Obviously, the employer cannot proceed to recover compensation if it is not notified of the settlement, We therefore find no merit in defendant's argument that section 3859, subdivision (b), somehow supersedes the notice provisions of section 3860, subdivision (a). We also note that section 3860, subdivision (a), was reenacted as part of the 1971 amendments which adopted section 3859, subdivision (b). (Stats. 1971, ch. 485, § 2, p. 970.) Thus, the two subdivisions should be read together, and we cannot assume that one was intended to supersede the other.

Even if the statutes were unclear, the policies underlying equitable subrogation, including the prevention of double recovery, would preclude the

---

undisputed. To the extent the historical facts were disputed, we have decided the case upon defendant's version of the facts.

The independent review standard is used to decide pure questions of law, such as whether a duty existed to notify American of the settlement under sections 3859 and 3860. (*Ghirardo* v. *Antonioli* (1994) 8 Cal.4th 791, 799-801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [usury]; *Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721].) "The interpretation of a statute . . . is a question of law, and we are not bound by evidence presented on the question in the trial court." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) We have thus applied the independent review standard in deciding the primary issue here.

tactics used here. "It is apparent that realization of the goals of the foregoing subrogation rules within the context of workers' compensation law . . . is possible here only if the burden of failure to comply with the statutory obligation of notice to PERS of the employee's settlement is placed upon the employee. The fair implementation of subrogation rights within the statutory scheme, as well as general principles of equity, compel such result here. In addition to the fact, noted earlier, that the employee was the only participant in the settlement who knew of PERS' claim for reimbursement, such employee stood to obtain double recovery if she failed to notify PERS of the settlement. Relieving an employee of the obligation to report her recovery so that she might profit at the expense of another conflicts with the fundamental precept of our law that no one should be permitted to take advantage of her own wrong. (Civ. Code, § 3517.)" (*Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, 916.)

Defendant Hagadorn points out that the *O'Dell* case does not rely on section 3859, subdivision (b), to find a duty to give notice. It states: "[I]t does not follow that said duty [to notify Rollins of the impending settlement] arises out of section 3859, subdivision (b). Indeed, [Rollins] concedes O'Dell's settlement was segregated, that is, constituted 'new money,' and did not include its right to reimbursement." (*O'Dell* v. *Freightliner Corp., supra,* 10 Cal.App.4th 645, 657.) However, the court reached the same result by finding a duty to give notice under equitable principles. (*Ibid.*) Thus, *O'Dell* supports American by holding that, even if the settlement was segregated and did not include the lien amount, a duty to notify was still present under equitable principles. (*Ibid.*) Thus, we reject the argument advanced by defendant Hagadorn in the trial court that "[t]he settlement thus left Employer free to proceed with the third party action on its own, and nothing about the settlement prevented or prejudiced Employer's right to do so." Nothing prevented or prejudiced the employer *except* defendant's failure to give timely notice of the settlement to the employer so that the employer could proceed with its third party action.

Next, defendant Hagadorn argues that, even if duty and breach have been shown, American failed to prove its damages with reasonable certainty. Specifically, he contends that "there was no evidence that this lien would have resulted in a collectible judgment, because there was no evidence that the third party tortfeasor was negligent, and no evidence that the third party was either solvent, or that sufficient insurance proceeds remained to satisfy a judgment." He analogizes the situation to a legal malpractice case, in which, after proving negligence, the plaintiff must prove that but for that negligence a better result could have been obtained in the underlying action. (*Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350, 1361 [7 Cal.Rptr.2d 482];

*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 197 [231 Cal.Rptr. 791].)

Accepting the premise, we find that damages were sufficiently proven.[7] (§ 3854.) Indeed, Mr. Hagadorn concedes that the lien claim was $155,388, and $87,151 had been recovered from other sources, leaving a balance of $68,237.[8] Although the defendant in the third party proceeding would have been able to contest the lien on various grounds, the failure of defendant to give notice to American prevented a trial on the validity and amount of the lien claim. Thus, any failure in this regard is attributable to defendant.[9] (Civ. Code, § 3517.)

Defendant Hagadorn also argues that American had successfully obtained a credit against future benefits in workers' compensation proceedings for the full amount of the settlement, and that the credit precluded American from having to pay out future benefits.

The argument misses the point. Although American would not have to pay future benefits, both because of the awarded credit and a previously approved compromise and release, the fact remains that it was entitled to recover the balance of $68,237, representing past benefits paid, from the third party defendant, or, in the case here, from defendant's settlement with the third party. As defendant Hagadorn states, the workers' compensation order merely allowed a credit against future payments due. It did not operate as an adjudication that the employer's lien claim would be effective against defendant Hagadorn's settlement proceeds. That adjudication is properly made in this proceeding. The fact that the third party defendant, Herrera, had filed for bankruptcy was irrelevant. There was testimony that Ohio Casualty Group had insured Herrera for $1 million, and reserved this case for $825,000, thus leaving ample exposure to pay defendant Hagadorn and the lien claim. Since the automatic bankruptcy stay is normally lifted to allow plaintiffs to pursue insurance carriers, there is no merit to the suggestion that any judgment would be uncollectible.

---

[7]The trial court found that damages and causation had not been proven because American did not seek relief from the automatic stay in the third party's bankruptcy proceedings. Defendant Hagadorn does not attempt to support this finding on appeal, but rather argues that the proof of causation and damages was insufficient.

[8]The "other sources" refers to the proceeds of a settlement American reached with Ohio Casualty Group, the carrier for the third party defendant, Herrera. American settled its claim with Ohio Casualty Group for $87,000.

[9]We note that defendant Hagadorn advised the trial court that "[t]he outcome of this case rests solely on whether plaintiffs have met their burden of establishing a breach by Mr. Hagadorn of any statutory duty of notice imposed by Labor Code Sections 3859 [and] 3860 . . . ."

## DISPOSITION

The judgment is reversed.

Ward, J., and McDaniel, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 18, 1996.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.